1. COMMON LAW 🕮⟾8—FORCE OF ENGLISH DECISIONS.
    Decisions of the English courts subsequent to 1776 are not a part of the New York common law, made binding by constitutional limitation, but have merely persuasive authority, in the absence of determination by the courts of the state.
    [Ed. Note.—For other cases, see Common Law, Cent. Dig. § 8; Dec. Dig. 🕮⟾8.]

2. GUARDIAN AND WARD 🕮⟾11—APPOINTMENT OF GUARDIAN BY DEED—TESTAMENTARY CHARACTER—STATUTE.
    A mother's appointment by deed, under Code Civ. Proc. §§ 2657, 2658, touching the appointment and qualification of a guardian of an infant by will or deed, can take effect only on her death, the deed contemplated by the statute being of a testamentary nature, as the statute is a reenactment of St. 12 Car. II, c. 24.
    [Ed. Note.—For other cases, see Guardian and Ward, Cent. Dig. §§ 34–39; Dec. Dig. 🕮⟾11.]

In the matter of the application for letters of guardianship of the persons and estates of Oliver Wolcott Gibbs and Angelica Singleton Gibbs, Jr. Application denied.

Augustus H. Skillin, of New York City, for petitioner.

🕮⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

FOWLER, S. [1, 2] This is an application for a decree of this court granting letters of guardianship to certain persons who are grantees in a deed appointing guardians, made by the mother of the infants, the father being dead. This application is claimed to be authorized by sections 2657 and 2658 of the Code of Civil Procedure. The deed is executed by Angelica S. Gibbs, the mother of the infants, a resident of the county of New York, to John B. B. Duer, residing at Altoona, Blair county, state of Pennsylvania. It is dated the 5th day of June, 1916. It is properly acknowledged, and it has been recorded in the county of New York on July 5, 1916, in the office of the register of that county. The petition states that the infants have no other general or testamentary guardian appointed by will or deed, or any acting guardian in socage or guardian of the person appointed pursuant to section 86 of the Domestic Relations Law (Consol. Laws, c. 14). The mother of these infants is still living, and she asks that the surrogate, upon the proof of the filing of the aforementioned deed, issue letters of guardianship without a bond, for the reason that the deed specifically grants the guardianship of the infants to the grantee without the giving of a bond. The question presented for consideration is whether, under sections 2657 and 2658, C. C. P., such deed becomes operative during the life of the grantor.

It is claimed by the applicant that the deed of appointment does become operative during appointer's life under said provisions of the Code. A cursory examination of the Code might justify such a conclusion. But this is a very old commonwealth, and the law regulating the family relations of our citizens is generally old law. It seemed to me, therefore, more prudent to examine the statute now embodied in the Code with some care, and ascertain, if possible, whether so great a change had been contemplated by the Legislature. As I had supposed to be the case, sections 2657, 2658, C. C. P., are only a re-enactment of a very old statute, long in force in New York. The history of this section is briefly this: The celebrated act of 12 Car. II, c. 24, converting feudal tenures into tenures in free and common socage provided for the appointment of guardians by deed. This statute was acted on in the province of New York after 1664 down to 1776, and indeed, in the important city of New York until the year 1783, although I am inclined, without very full examination, to conclude that it was not expressly re-enacted by the Colonial Assembly. But re-enactment was not then essential.

It was the statute (12 Car. II, c. 24) which first provided that a father "might appoint a guardian by his deed, executed in his lifetime or by his last will." This provision was re-enacted by the Legislature of this state in 1787, with the other English statutes in force in the province of New York (2 J. & V. 96, § 11), and I find it was continued in all subsequent revisions of the statutes of our state. Not only did Judge Jones include it in his revision in 1788, but Chancellor Kent in his, made in 1801 (1 K. & R. 181). In 1813 the same provision was included in the statutes, re-enacted under the authority of Judges Van Ness and Woodworth (1 R. L. p. 368). Finally the provision was incorporated in the celebrated Revised Statutes of 1830 (2 R. S.

p. 150). Thence it passed into Domestic Relations Law, § 81, where it now is. Through all these various revisions, for which this state is so renowned, the present provision of the Domestic Relations Law is nothing other than 12 Car. II, c. 24. The Domestic Relations Law, then, contains at present our substantive law on this subject, and Mr. Throop's Code nothing but the adjective law, which cannot control the substantive law.

Perhaps no confusion would have ensued had not Mr. Throop, when he transferred portions of the Revised Statutes to his revision (chapter 18, C. C. P., § 2851), published a note far from lucid in character. It is that note which is likely to mislead the unwary, as it seems to indicate some change of substance in the law, whereas none was intended by him and none made. His only desire generally was to clear up doubts on statutes. That was, indeed, his main characteristic as a legislative draughtsman.

The construction of this old law has been uniform. Chancellor Kent states explicitly in his Commentaries (II, 225), that the deed mentioned in the statute, 12 Car. II, c. 24, "is only a testamentary instrument, and to operate only in the event of death." While text-books, even of such supremely competent commentators as Kent, are not sources of law in our system, yet Chancellor Kent's statements are always fortified by authority. Lord Shaftisbury v. Hannan, Finch's Rep. 323; Lord Eldon in Ex parte v. Earl of Ilchester, 7 Ves. 367. While decisions of the English courts subsequent to 1776 are not a part of our common law, made binding by constitutional limitation, they are often extremely persuasive, in the absence of the determinations of our own courts. This was Judge Reeves' conception in his classical treatise on Domestic Relations, to which I often refer, as it was so highly regarded in early days by the distinguished chancellors of this state. Judge Reeves states:

"When we reflect that the deed is not to operate until the death of the maker, and is ambulatory and revocable during his life, it will appear to be nothing more than a testamentary instrument in the form of a deed." Reeves' Domestic Relations, 315, 316.

There is no adjudication in the courts of this state on the point in question. But there is a very important dictum in Wuesthoff v. Germania Life Ins. Co., 107 N. Y. 580, 14 N. E. 811, in effect that the parents' deed appointing a guardian is in fact a testamentary instrument. This is in line with the statements of Chancellor Kent and Judge Reeves. This being so, the accepted sense of an historical statute is not to be lightly changed by courts of justice, even under the Republic. It would, I think, alter the old family relations and responsibilities injuriously if parents could divest themselves of parental responsibilities by appointing guardians by deed to take effect during their life.

For all the reasons stated the application ought to be denied, and it is denied.